UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
42-50 21ST STREET REALTY LLC,

                   Plaintiff,

         -against-

FIRST CENTRAL SAVINGS BANK        **MEMORANDUM AND ORDER**
and THOMAS J. STEVENS,              20-CV-5370 (RPK) (RLM)

                Defendants.
-----------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

    Alleging that defendants First Central Savings Bank ("FCSB") and Thomas J. Stevens

tricked it into defaulting on a mortgage, plaintiff 42-50 21st Street Realty LLC ("21st Street")

sued. Defendants move to dismiss.[1] For the reasons that follow, the motion is granted in part and

denied in part.

## BACKGROUND

    The following facts come from the complaint, incorporated documents, documents integral

to the complaint, and documents amenable to judicial notice. *United States ex rel. Foreman v.*

*AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). These include the "contract[s] . . . containing

obligations upon which the plaintiff's complaint stands or falls." *Id*. at 107. The allegations in the

complaint are "accept[ed] as true" on a motion to dismiss. *Hamilton v. Westchester Cnty*., 3 F.4th

---

[1] I decline defendants' request to convert this motion into a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *See* Notice of Mot. to Dismiss 1 (Dkt. #26). A court may convert a motion to dismiss into a motion for summary judgment only if each party has had "a reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Defendants have appended new materials to their reply, prompting 21st Street to move to strike or, in the alternative, to file a sur-reply. *See* Reply Decl. of Michael Serao (Dkt. #31); Notice of Mot. to Strike (Dkt. # 34). The continued introduction of evidentiary materials late in the briefing and the lack of Rule 56.1 statements both argue against converting the motion. *See Santulli v. Moy*, No. 18-CV-122 (NGG) (VMS), 2019 WL 3429081, at *1 n.1 (E.D.N.Y. July 30, 2019) (citing a party's "expressed interest in adding additional evidence" as a reason to decline conversion); *Vailette v. Lindsay*, No. 11-CV-3610 (NGG) (RLM), 2014 WL 4101513, at *8 (E.D.N.Y. Aug. 18, 2014) (citing, *inter alia*, the absence of Rule 56.1 statements as a reason not to convert).

86, 90 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)).

In 2009, FCSB provided 21st Street with a loan to purchase a vacant building in Long Island City. Compl. ¶¶ 29, 32, 38. With FCSB's knowledge, *id*. ¶¶ 67-70, 21st Street transformed this property into an "all nude adult nightclub," refinancing with FCSB several times along the way. *Id*. ¶ 52; *see id*. ¶ 74-81, 90. Mr. Stevens, FCSB's Chief Lending Officer, managed 21st Street's account. *Id*. ¶ 16. With Mr. Stevens help, FCSB and 21st Street negotiated unique loan products apparently unavailable to other FCSB customers. *Id*. ¶¶ 58-59, 83-84.

Over the next few years, 21st Street established its business. First, it leased the premises to 21 Group, an entity operated by the same persons who owned 21st Street. *Id*. ¶¶ 39-40. While 21st Street continued to hold the mortgage, 21 Group ran the nightclub. *Ibid*. At FCSB's behest, both corporations, along with another known as SCE Group, Inc., shifted their accounts to FCSB. *Id*. ¶ 37. Also at FCSB's behest, 21st Street agreed to allow FCSB to automatically debit its account to make the monthly mortgage payments. *Id*. ¶ 104. 21st Street, 21 Group, and SCE Group, Inc. then asked FCSB to set up several automatic transfer agreements between their various accounts. *Id*. ¶¶ 102-04. In particular, FCSB agreed to transfer funds sufficient to cover the mortgage payments from 21 Group's operating account to 21st Street's mortgage-payment account automatically on a monthly basis. Decl. of Michael Serao Ex. C (Dkt. #28-4) ("21st Street Transfer Agreement"). FCSB also agreed to sweep funds periodically from 21 Group's merchant account to 21 Group's operating account. Gastwirth Decl. Ex. C (Dkt. #27-3) ("21 Group Transfer Request"); *id.* Ex. D (Dkt. #27-4) ("21 Group Transfer Notation").

This relationship continued for several years. Compl*.* ¶¶ 4-5.

Then, in December 2017, police shut down the nightclub on prostitution charges. *Id*. ¶¶ 167, 124, 127. As 21st Street tells it, FCSB became concerned about reputational risk and began looking for ways out of the mortgage. *Id*. ¶¶ 124-34. The bank decided that its best bet was to sell the mortgage on the secondary market. *Id*. ¶ 7. However, if the loan was performing, FCSB would never get par value. *Ibid*. So defendants allegedly contrived to engineer an event of default. *Ibid*. That way, a buyer could immediately declare a default and charge 21st Street a steep interest rate. *Ibid*.

To manufacture a default, FCSB allegedly canceled the automatic sweeps from 21 Group's merchant account into its operating account between late January and early February 2018. *Id*. ¶¶ 146-47, 149, 340-43.[2] As a result, FCSB's operations account did not have sufficient funds to make the February mortgage payment. *Id*. ¶ 341. 21st Street also alleges that FCSB failed to automatically debit 21st Street's mortgage-payment account. *Id*. ¶ 148.

In mid-February, FCSB notified 21st Street of the missed February payment. *Id*. ¶¶ 162, 164. On March 3, 21st Street authorized a payment to catch up. *Id*. ¶ 169. By this time, though, both February's and March's payments were past due. *Id*. ¶ 170. Only one payment occurred, *ibid*., and FCSB warned 21st Street that the March payment was now late, *id*. ¶ 172.

Four days after giving notice of the missed March payment, FCSB also drafted a notice indicating that 21st Street had failed to provide required financial materials from 2015 and 2016, which constituted another event of default. *Id*. ¶¶ 174. The complaint does not indicate which financial materials were allegedly missing or when FCSB realized they were missing. FCSB

---

[2] Bank statements attached by defendants suggest 21st Street's representations concerning the automatic transfers are inaccurate. *See, e.g.*, Decl. of Loretta M. Gastwirth ("Gastwirth Decl.") Ex. E (Dkt. #27-5); Reply Decl. of Michael Serao (Dkt. #31). Nevertheless, a court must disregard such extrinsic materials absent a Rule 12(d) conversion, *AECOM*, 19 F.4th at 106-07, and accept plaintiff's allegations as true on a motion to dismiss, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

backdated the notice from March 23, 2022, to March 19, 2022, but never sent it to 21st Street. *Id*. ¶¶ 174-75.

Seven days later, FCSB assigned the mortgage and note to Watermarq Capital Partners ("Watermarq"). *Id*. ¶ 185. Watermarq immediately accelerated the mortgage, demanding repayment of the principal, several thousand dollars in penalties and fees, and $433,868.22 in interest accrued for failing to supply the missing financial materials. *Id*. ¶¶ 188, 198. As events of default, Watermarq cited the alleged failure to provide financial information in 2015 and 2016, to pay interest and fees associated with the missing information, and to make timely monthly payments in February and March 2018, as well as 21st Street's alleged use of its property for illegal activities. *Id*. ¶ 191.

Watermarq ultimately brought a suit seeking to foreclose on the mortgage. After 21st Street settled that lawsuit with Watermarq, *id*. ¶ 240, 21st Street sued FCSB and Mr. Stevens. *See* Compl. 21st Street brings claims for (i) fraud and (ii) negligent/fraudulent misrepresentation ("negligent misrepresentation") against both defendants. *Id*. ¶¶ 246-80, 314-35. Solely against FCSB, 21st Street also alleges (iii) a violation of New York General Business Law § 349, (iv) breach of the implied covenant of good faith and fair dealing, and (v) breach of contract. Compl. ¶¶ 281-313, 336-50.

Appending the mortgage, note, transfer agreements, and other materials, defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b). *See* Notice of Mot. to Dismiss (Dkt. #26). In the alternative, they seek to convert their motion into a motion for summary judgment under Rule 12(d). *Ibid.* After defendants added additional materials to their reply brief, 21st Street moved to strike, or, in the alternative, for leave to file a sur-reply. *See* Notice of Mot. to Strike (Dkt. # 34); Mots. to Strike (Dkt. ##38-40) (sur-replies associated with the motion to

strike).  21st Street also requests leave to amend if the breach-of-contract claim is dismissed.  Pl.'s Mem. in Opp'n 14 (Dkt. #30).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted."  To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Fed. R. Civ. P. 8).  The facial "plausibility standard is not akin to a 'probability requirement.'"  *Ibid.*  (quoting *Twombly*, 550 U.S. at 556).  But it requires a plaintiff to allege sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ibid*.  In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true.  *Ibid*.  But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid*.

Claims of fraud and negligent misrepresentation are subject to the heightened pleading requirements of Rule 9(b).  That rule requires plaintiffs to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To do so, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996) (citations omitted); *see Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc*., 723 F.3d 192, 197 (2d Cir. 2013); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co*., 404 F.3d 566, 578-79, 583 (2d Cir.

2005).  "In cases where the alleged fraud consists of an omission and the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."  *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 440 (S.D.N.Y. 2019) (citation omitted).  While scienter "may be alleged generally," Fed. R. Civ. P. 9(b), the plaintiff must "allege facts that give rise to a strong inference of fraudulent intent," *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted).  A "strong inference" may be pleaded "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal citations omitted).

## DISCUSSION

Defendants' motion to dismiss is granted in part and denied in part.  The fraud, negligent-misrepresentation, breach-of-the-covenant-of-good-faith-and-fair-dealing, and breach-of-contract claims are dismissed in full, and the Section-349 claim is dismissed in part.  Since the Court disregards the materials plaintiff seeks to strike, *see* page 3 n.2, *supra*, the motion to strike is terminated as moot.[3]

## I.    Plaintiff Does Not State a Claim for Fraud

21st Street has not adequately pleaded a claim for fraud.  To plead fraud under New York law, a plaintiff must allege "(1) a material misrepresentation or omission of fact (2) made by a defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the

---

[3] The sur-replies associated with this motion, which have also been styled "motions to strike," *see* Mots. To Strike (Dkt. ##38-40), are terminated for the same reason.

part of the plaintiff; and (5) resulting damage to the plaintiff." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (brackets and citation omitted); *see Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (N.Y. 2016). "[W]here fraud is allegedly perpetrated by omission," the plaintiff must also allege that the "[d]efendant . . . had a duty to disclose the relevant fact." *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 515 (S.D.N.Y. 2014) (citing *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (N.Y. 2011)); *see Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007). Plaintiff alleges fraud both through affirmative misstatements and through omissions, but it fails to adequately plead a claim under either approach.

### A. The allegations concerning affirmative misrepresentations do not meet Rule 9(b)'s heightened standard.

First, 21st Street has failed to plead a fraud claim based on affirmative misrepresentations. In its principal affirmative-misrepresentation claim, 21st Street alleges that defendants committed fraud by "misrepresent[ing] . . . that the loan was current[] and that automatic payments were being made." Compl. ¶ 249. It grounds this claim on three specific communications made to 21st Street: the January, February, and March loan billing statements. *Id.* ¶¶ 142, 162-63, 172-73, 194, 249. As noted above, to satisfy Rule 9(b) a plaintiff alleging fraud must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Segui*, 91 F.3d at 347. Plaintiff has not met this standard for his claims that defendants misrepresented its loan as being current and misrepresented that automatic payments were being made.

First, plaintiff vaguely asserts that the February and March loan billing statements "indicated that the Loan was current in all respects." Compl. ¶ 163 (February); *id.* ¶ 194 (February

& March); *id*. ¶ 194 (the statements "affirmatively represented that the [l]oan was current . . . except for the late payments"). But the complaint does not identify the statements in those documents that purportedly indicated the loan was current. Indeed, the statements that plaintiff specifically describes are statements that suggest the loan was *not* current. 21st Street alleges that the February statement "represent[ed] that a late charge . . . had been charged to the account based on the untimely remittance of the monthly payment." *Id*. ¶ 162. The same is true of the March statement, which "indicat[ed] that the monthly payment due on March 5, 2018 was outstanding, and that a late charge . . . was charged to the account." *Id*. ¶ 172. In other words, the allegedly fraudulent "content" indicating the loan was current is not described "with particularity," and the only content described with particularity appears to be accurate. *BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 103 (E.D.N.Y. 2021) (quoting *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012)).

21st Street's failure to adequately plead misstatements in these documents is unsurprising in light of the content of the loan billing statements. I may take judicial notice of the contents of those statements because 21st Street refers to them and relied heavily on their terms and effects in drafting its complaint. *AECOM*, 19 F.4th at 106; *see Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (SEC filings); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (private communications); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010) (emails "referred to" in complaint). These short statements, two pages each, only contain information about the mortgage's principal, interest accrued on the principal, monthly payments, and late fees accrued for missed monthly payments. *See* Decl. of Loretta Gastwirth Ex. G (Dkt. #27-7) ("Loan Billing Statements"). No statement that plaintiff's loan is "current," Compl. ¶ 194, is evident. And the statements do not address 21st Street's compliance with other terms of the

mortgage.  Loan Billing Statements 4-7.  In any event, because plaintiff has not identified with particularity the portions of these statements that are fraudulent, this misrepresentation claim must be dismissed for failure to satisfy Rule 9(b).

Plaintiff also falls short under Rule 9(b) in claiming that defendants falsely represented that automatic payments were being made from its account.  Compl. ¶ 249.  The complaint does not "state where and when" any such representation was made.  *Segui*, 91 F.3d at 347.  To be sure, the complaint alleges that the January loan billing statement indicated that the January payment was made "via 'AUTOMATIC PAYMENT.'"  Compl. ¶ 146.  But 21st Street does not suggest that statement is false.  Instead, the pleadings indicate that FCSB did not cancel the automatic payments until February.  *Id*. ¶¶ 151.  And while plaintiff alleges that FCSB "breached its promise and agreement . . . to automatically transfer funds" in "February and March," *id*. ¶ 340, plaintiff does not allege that the February or March loan billing statements suggested that automatic payments had been made those months, *id*. ¶¶ 162-63, 172-73.  Again, if specific content was fraudulent, the pleadings do not identify it.  And again, this omission is unsurprising considering the substance of the loan billing statements that the complaint incorporated by reference.  None of those statements appear to contain any representation that future payments would be made by automatically.  Loan Billing Statements 2-7.

In short, 21st Street has not "detail[ed] the statements . . . that [it] contends [were] fraudulent."  *Segui*, 91 F.3d at 347.  Given the absence of "details or specific factual allegations" indicating what parts of FCSB's or Mr. Stevens' affirmative representations actually were inaccurate, *Barron Partners, LP v. Lab123, Inc*., No. 07-CV-11135 (JSR), 2008 WL 2902187, at *11 (S.D.N.Y. July 25, 2008), plaintiff's allegations are insufficient to state a claim for fraud against either defendant under Rule 9(b)'s heightened standard.

**B.      21st Street's allegations of fraud by omission also fail.**

21st Street's attempt to ground its fraud claim in defendants' omissions also fails.  Plaintiff alleges that defendants "concealed and omitted" the fact that defendants "had stopped automatic payments" for its mortgage.  Compl. ¶ 247.  Further, plaintiff alleges that defendants "concealed and omitted" the fact that they "were no longer comfortable holding a mortgage on a property that housed an adult nightclub establishment," that they "believed that plaintiff and its guarantors failed to provide defendants with financial information in 2016 and 2017," that defendants had treated the loan as non-performing and sub-standard, and that those events were material enough to warrant a default.  *Id.* ¶ 247.  In addition, plaintiff asserts, defendants "failed to inform" plaintiff that the loan was being sold because defendants no longer wanted to hold it.  *Id.* ¶ 248.  21st Street has not adequately pleaded fraud based on any of these alleged omissions.

**1.      21st Street's omissions claim against FCSB relating to automatic payments is deficient.**

21st Street's claim that FCSB failed to disclose the termination of automatic payments for 21st Street's mortgage does not state a claim because plaintiff has not adequately pleaded a duty to disclose.  To state a claim for fraud by omission, the "[d]efendant must have had a duty to disclose the relevant fact."  *LBBW Luxemburg S.A.*, 10 F. Supp. 3d at 515 (citing *Mandarin Trading Ltd.*, 16 N.Y.3d at 179).  "[A] duty to disclose may arise in two situations: first, where the parties enjoy a fiduciary relationship, and second, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."  *Loreley Fin. (Jersey) No. 3 Ltd.*, 13 F.4th at 263 (quoting *Lerner*, 459 F.3d at 292).  Plaintiff has not adequately pleaded that either situation is present here.

First, 21st Street has not pleaded facts supporting a fiduciary relationship with FCSB.  The general rule under New York law is that "the relationship between a borrower and a bank is

contractual in nature and does not create a fiduciary relationship." *Baumann v. Hanover Cmty. Bank*, 100 A.D.3d 814, 817 (N.Y. App. Div. 2012). New York's courts rarely, if ever, disturb this rule. *JP Morgan Chase Bank, N.A. v. Freyberg*, 171 F. Supp. 3d 178, 191 (S.D.N.Y. 2016) (collecting cases). To establish the existence of a fiduciary relationship, a plaintiff must allege that it "has reposed trust or confidence in [a defendant's] integrity and fidelity" such that the defendant "gain[ed] a resulting superiority or influence." *Marini v. Adamo*, 995 F. Supp. 2d 155, 201 (E.D.N.Y. 2014) (quotations omitted), *aff'd*, 644 F. App'x 33 (2d Cir. 2016). The degree of trust or influence found in a "conventional business relationship" is not enough. *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 205 (S.D.N.Y. 2016) (quoting *Feigen v. Advance Cap. Mgt. Corp.*, 150 A.D.2d 281, 283 (N.Y. App. Div. 1989)). Rather, the relationship "must exhibit the characteristics of de facto control and dominance." *Doe v. Roman Cath. Diocese of Rochester*, 12 N.Y.3d 764, 765 (N.Y. 2009) (quotations omitted).

21st Street has not pleaded "characteristics of de facto control and dominance," *ibid.*, in its relationship with FCSB or Mr. Stevens. Indeed, the complaint reveals 21st Street to be a sophisticated commercial entity that successfully negotiated terms with defendants. For example, when 21st Street requested a fifteen-year self-liquidating loan from FCSB, Mr. Stevens explained that few banks offered such loans and FCSB offered none. *Id*. ¶¶ 82-87. Refusing to take no for an answer, 21st Street insisted and eventually prevailed. *Ibid*. 21st Street also engaged in other complex transactions, such as re-leasing the mortgaged property to an affiliate, 21 Group, to run the nightclub, *id*. ¶ 40, and participating in a web of automatic transfer and payment agreements, *id*. ¶¶ 102-04. Simply put, the allegations in the complaint do not present the indicia of de facto control that typically give rise to a fiduciary relationship. *Cf. Gordon v. Bialystoker Ctr. & Bikur Cholim, Inc.*, 45 N.Y.2d 692, 698 (1978) (fiduciary relationship between an elderly stroke victim

and her nursing home); *Fisher v. Bishop*, 108 N.Y. 25, 28 (1888) (fiduciary relationship between a seventy-year-old man and his lawyer); *see Mfts. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993) (citing *Gordon* and *Fisher* as reflecting the type of unusual circumstances that can give rise to a fiduciary relationship between a debtor and creditor).

Without indicia of "de facto control and dominance," *Roman Cath. Diocese of Rochester*, 12 N.Y.3d at 765, 21st Street relies on its longstanding, amicable relationship with defendants, Compl. ¶¶ 257, 263-65; Pl.'s Mem. in Opp. 22-24. However, "the mere fact that a corporation has borrowed money from the same bank for several years is insufficient to transform the relationship into one in which the bank is a fiduciary." *Yanakas*, 7 F.3d at 318. Neither is an allegation that "the parties are familiar or friendly." *Call v. Ellenville Nat. Bank*, 5 A.D.3d 521, 523 (N.Y. App. Div. 2004). And while 21st Street alleges that Mr. Stevens gave 21st Street advice by telling it to remove a "Pornographic Uses Prohibited" clause during a contract negotiation, Compl. ¶¶ 58-59, "[a]dvice alone . . . is not enough to impose a fiduciary duty" either, *EBC I, Inc. v. Goldman Sachs & Co.*, 91 A.D.3d 211, 216 (N.Y. App. Div. 2011). All these allegations describe is an amicable, longstanding business relationship between sophisticated, hard-bargaining commercial entities—in other words, a "conventional business relationship." *Mueller*, 225 F. Supp. 3d at 205 (quotations omitted). And a "conventional business relationship" does not give rise to a fiduciary duty. *Ibid.* (quotations omitted). Plaintiff therefore has not plausibly alleged that defendants had a duty to speak because of a fiduciary relationship.

21st Street has not adequately pleaded a duty to disclose the termination of automatic payments on any other basis either. Absent a fiduciary relationship between the parties, a duty to disclose arises only "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Loreley Fin.*

*(Jersey) No. 3 Ltd.*, 13 F.4th at 263 (quoting *Lerner*, 459 F.3d at 292).  "[S]uch a duty usually arises . . . in the context of business negotiations when parties are entering a contract."  *Lerner*, 459 F.3d at 292 (quotations omitted).  That is not the context here.  But "[e]ven if" this duty can arise in other contexts, *ibid.*, plaintiff has not plausibly alleged that defendants "possesse[d] superior knowledge, not readily available to [plaintiff]," concerning the automatic payments at issue.  *Loreley Fin. (Jersey) No. 3 Ltd.*, 13 F.4th at 263.  At bottom, plaintiff is alleging that defendants failed to notify it about the absence of transfers from an operating account "maintained by [p]laintiff and its affiliates," Compl. ¶ 99, to plaintiff's own mortgage account.  Plaintiff does not plausibly allege that information about transactions (or lack of transactions) from an operating account maintained by plaintiff, to plaintiff's own mortgage account, was "not readily available" to plaintiff.  *Loreley Fin. (Jersey) No. 3 Ltd.*, 13 F.4th at 263.  This pleading deficiency is unsurprising, because it is implausible that information about plaintiff's own mortgage balance and the balance of its affiliated operating account would be unavailable to plaintiff.  *Cf.* pages 7-10, *supra* (noting that plaintiff was receiving loan balance statements, and that while the January loan balance statement reflected an automatic payment, the February and March balance statements did not).  Since plaintiff has failed to plead a special relationship that would require disclosure of the termination of automatic payments, plaintiff's fraud claim against FCSB based on this omission is dismissed.

**2.      21st Street's other omissions claims against FCSB also fall short.**

21st Street has also failed to state a claim for fraud based on FCSB's other alleged omissions, relating to FCSB's desire to sell the loan and FCSB's beliefs regarding whether plaintiff had defaulted and whether the loan was non-performing or sub-standard.  *See* Compl. ¶¶ 247-248.  Even assuming that 21st Street had pleaded the type of special relationship necessary for an omissions claim here—because these fraudulent-omission claims rest on information about

FCSB's intent that was not readily available to plaintiff—21st Street has not plausibly alleged reasonable reliance on the alleged omissions.

The contents of plaintiff's note and mortgage with FCSB renders unreasonable reliance on FCSB's alleged failure to disclose certain of its views and intentions regarding plaintiff's loan. To assess whether reliance on omissions is reasonable, courts consider "the entire context of the transaction, including . . . the sophistication of the parties, and the content of any agreements between them." *Coughlan v. Jachney*, 473 F. Supp. 3d 166, 196 (E.D.N.Y. 2020) (quoting *Century Pac., Inc. v. Hilton Hotels Corp.*, 354 F. App'x 496, 498 (2d Cir. 2009) (summary order)). 21st Street is a sophisticated commercial entity. Compl. ¶¶ 40, 82-87, 102-04. And it negotiated a note and mortgage that limited FCSB's obligations to provide notice to the circumstances "expressly provided [for] in this Agreement." Mortgage § 36. The agreement does not expressly provide for FCSB to give notice if it became uncomfortable with 21st Street, if a default had occurred, if the mortgage was non-performing, or if FCSB was trying to sell the mortgage. Moreover, the mortgage provides with respect to default that "[i]f an Event of Default occurs, then all amounts owing under this Note shall forthwith become due and payable at the option of Bank *without notice*." Note § 3 (emphasis added); *see* Mortgage §§ 7-8 (additional discussion of default events, specifying that notice is required before acceleration for certain default events but not for others).

Since 21st Street is a sophisticated actor and the "unambiguous terms of the loan agreement" disclaim any duty to provide notice concerning the matters about which defendants were silent, "any such reliance" on FCSB's silence "would not be justified." *Everlast World's Boxing Headquarters Corp. v. Trident Brands Inc*., No. 19-CV-503 (JMF), 2020 WL 917058, at *6 (S.D.N.Y. Feb. 26, 2020) (quoting *Bank Leumi Trust Co. v. D'Evori Int'l, Inc*., 163 A.D.2d 26, 32 (N.Y. App. Div. 1990)); *Century Pac.*, 354 F. App'x at 498-99 ("As a sophisticated party

confronted with . . . known risk[s], [21st Street's] failure to insert protective language into the contract—by itself—renders reliance . . . unreasonable as a matter of law." (brackets omitted)). The remaining fraudulent-omission claims against FCSB are therefore dismissed.

### 3.    Omissions Claims Against Thomas Stevens

Finally, Mr. Stevens may not be held liable for his silence either.  No specific allegations show that Mr. Stevens was involved in terminating any transfer agreements or that he even knew of their existence. *See Eternity Global Master Fund, Ltd.*, 375 F.3d at 186-87 (a plaintiff must show "inten[t] to defraud").  And while the mortgage and note only define 21st Street's and FCSB's relationship, Mr. Stevens was acting as FCSB's agent.  As described above, FCSB itself did not commit fraud, and the complaint lacks allegations that Mr. Stevens committed "acts or omissions . . . that [we]re independent of any acts he performed within the scope of his employment for [FCSB]." *A.L. Eastmond & Sons, Inc. v. Keevily, Spero-Whitelaw, Inc.*, 107 A.D.3d 503, 503 (N.Y. App. Div. 2013).  Since 21st Street could not reasonably expect notice from FCSB, and Mr. Stevens is alleged only to have acted as FCSB's agent, 21st Street could not reasonably expect notice from Mr. Stevens either.  The fraud claims against Mr. Stevens are dismissed.

## II.    The Complaint States a Section-349 Claim

By contrast, the Section-349 claim survives dismissal.  Section 349 protects New York's consumers from "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  To successfully plead such a claim, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d. Cir. 2015). Conduct must therefore be "consumer-oriented" and "aimed at the public at large" to fall within

the statute's ambit. *Zawahir v. Berkshire Life Ins. Co.*, 22 A.D.3d 841, 842 (N.Y. App. Div. 2005). "Private contract disputes, unique to the parties," by contrast, do "not fall within the ambit of the statute." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (N.Y. 1995). Plaintiff alleges that defendants have violated Section 349 because the company routinely provides consumers with "deceptive loan statements," Compl. ¶ 292, and "has a practice of intentionally terminating [consumers'] authorized automatic payments, without disclosure to borrowers, to create events of default," *id*. ¶ 290. While the allegations concerning "deceptive loan statements" find no traction, the alleged termination of the authorized automatic payments are enough to sustain a Section-349 claim.

The allegations concerning the loan statements fall short because 21st Street has not plausibly alleged any deceitful statements in the documents it received. Plaintiff's billing-statement allegation is that "FCSB issued monthly loan statements to borrowers in which they represented that their loans were current, even though FCSB was secretly treating the loans as 'non-performing,'" *id.* ¶ 289, and that these loan statements "deceived [plaintiff] and other borrowers to believe that their loans were current," *id.* ¶ 294; *see id.* ¶¶ 300-301. As explained above, I may take judicial notice of the contents of plaintiff's loan billing statements. *See* pages 8-9, *supra*. And the loan billing statements for the only months in which plaintiff's loan was *not* current—February and March—contradict this allegation that plaintiff's loan billing statements misrepresented its loan as being current. *See ibid.*; Loan Billing Statements 4-7. To the contrary, the statements contain no representation of currency, and they describe missed payments and late charges. *See* pages 8-9, *supra*; Loan Billing Statements 4-7; *see* Compl. ¶¶ 162, 172; *Wimberly v. Experian Info. Sols.*, No. 18-CV-6058 (MKV), 2021 WL 326972, at *3 (S.D.N.Y. Feb. 1, 2021) ("[W]hen documents attached to the complaint as exhibits or incorporated by reference in the

complaint contain statements that contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true." (quotations omitted) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)); *Endemann v. Liberty Ins. Corp.*, 390 F. Supp. 3d 362, 370 (N.D.N.Y. 2019) (collecting cases). Plaintiff therefore has failed to plausibly allege any deceptive practice directed at consumers that caused him injury, based on loan billing statements that purportedly represented that loans with overdue payments were actually current.

The same cannot be said of the allegation that FCSB "has a practice of intentionally terminating authorized automatic payments" to "create events of default." Compl. ¶ 290. Contrary to defendants' arguments, these allegations state an actionable claim under Section 349. According to the complaint, FCSB permits "consumers to authorize automatic payments" and then abruptly terminates these payments to manufacture defaults. *Id.* ¶¶ 286, 291. In particular, the complaint alleges that FCSB "request[ed]" that 21st Street permit FCSB "to automatically debit its account for the mortgage payment each month." *Id.* ¶ 104. FCSB then automatically debited 21st Street's account voluntarily from 2009 through 2017, even though the agreement officially required annual reauthorization. *Id.* ¶ 105-07. And when FCSB finally decided to "create [an] event[] of default," its abruptly terminated the payments without notice. *Id.* ¶ 290.

These allegations plausibly describe "consumer-oriented conduct" that is "materially misleading" and injurious. *Orlander*, 802 F.3d at 300. Since the complaint alleges that FCSB engages in the same practice with other customers, Compl. ¶¶ 286-87, this conduct is "consumer-oriented in the sense that [it] potentially affect[s] similarly situated consumers," *Oswego Laborers' Loc. 214 Pension Fund*, 85 N.Y.2d at 27 (finding conduct consumer oriented when a standard banking product is offered broadly to bank's customers). And while plaintiff does not specifically

17

identify others who have suffered from the same conduct, no such requirement exists to allege a Section-349 claim. *See, e.g.*, *Kapsis v. Am. Home Mortg. Servicing Inc*., 923 F. Supp. 2d 430, 450 (E.D.N.Y. 2013) (consumer-oriented conduct sufficiently alleged when defendant allegedly serviced plaintiff's loans deceptively and defendant services many loans); *Donnenfeld v. Petro, Inc*., 333 F. Supp. 3d 208, 223 (E.D.N.Y. 2018) (collecting cases); *Harte v. Ocwen Fin. Corp*., No. 13-CV-5410 (MKB), 2014 WL 4677120, at *17 (E.D.N.Y. Sept. 19, 2014) (same).

The alleged behavior could also plausibly "mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Loc. 214 Pension*, 85 N.Y.2d at 26. Although FCSB claimed that the automatic-debit agreement required annual reauthorization, it never enforced this requirement, thus "lull[ing]" 21st Street into assuming the payments would be made. *Pandit v. Saxon Mortg. Servs., Inc*., No. 11-CV-3935 (JS) (GRB), 2012 WL 4174888, at *6 (E.D.N.Y. Sept. 17, 2012) (continued acceptance of payments after termination of trial period materially misled plaintiffs by "lull[ing]" them into inaction). After eight years of such conduct, it was "reasonable" for plaintiff to assume the automatic debits would continue. *Oswego Laborers' Loc. 214 Pension*, 85 N.Y.2d at 26.

And finally, plaintiff also alleges that this injury caused it harm. At a minimum, abruptly terminating automatic payments would allow FCSB to collect late fees from the missed payments. *Id*. ¶ 230. They also apparently facilitated marketing of loans as nonperforming on the secondary market. *Id*. ¶ 290.

Defendants make several arguments for dismissal, but none persuade. First, defendants suggest that the terms of the mortgage and note bar plaintiff's claims, or, in the alternative, preclude plaintiff from recovering monetary damages. Defs.' Mem. in Supp. 8-13 (Dkt. #29). This line of attack falters because defendants do not tie the mortgage and note to the automatic-

debit agreement.  Defendants rely on Sections 5 and 8 of the note.  *Id*. at 9-11.  Section 5 specifies that FCSB is relieved of liability upon the note's transfer.  Note § 5.  Section 8 provides that, absent a signed writing, no "course of dealing or . .  agreement" will "waive, modify or discharge, in whole or in part, this Note or any provision hereof."  Note § 8.  Defendants also cite Paragraph 37 of the mortgage, which limits the mortgagee to injunctive relief whenever FCSB "fail[s] to act reasonably . . . under any of the Loan Documents."  Mortgage ¶ 37.

The trouble with these provisions is that while they may govern conduct under the mortgage and note, the allegations do not establish that they also govern the automatic-debit agreement.  On these pleadings, it is not possible to treat the automatic-debit agreement as "form[ing] part of a single transaction" with the mortgage and note.  *TVT Recs. v. Island Def Jam Music Grp*., 412 F.3d 82, 89 (2d Cir. 2005) (quotations omitted).  Whether "writings . . .must be read together" as "form[ing] part of a single transaction and are designed to effectuate the same purpose" turns on the "intent" of the parties.  *Ibid*. (quotations omitted).  To determine whether such intent existed, a court inquires whether "there would have been no bargain whatever if any promise or set of promises had been stricken" in either of the documents.  *Id*. at 90 (quoting *Commander Oil Corp. v. Advance Food Serv. Equip*., 991 F.2d 49, 52-53 (2d Cir.1993)).  Here, no such inference can be made.  While the agreements were formed close in time, Compl. ¶ 105, and bear on the same subject matter, *id*. ¶ 103-06, the complaint does not suggest that the negotiation of the mortgage and note were predicated on the existence of an automatic-debit agreement.  Since this "issue . . . is typically a question of fact for the jury," I decline to read the automatic-debit agreement with mortgage and note "'as one agreement'" at this phase in the pleadings.  *TVT Recs*., 412 F.3d at 89 (quotations and quotations omitted).

Nor do the mortgage and note incorporate the automatic-debit agreement by reference.  To incorporate a document by reference, the contract "must be so referred to and described in the instrument that the paper may be *identified beyond all reasonable doubt*."  *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (quotations omitted; emphasis in original).  Here, neither the mortgage nor the note "refer[] to" or "describe" the automatic-debit agreement such that it may be "identified beyond all reasonable doubt."  *Ibid*.  And since the automatic-debit agreement may not be read as part of the mortgage and note or incorporated into them, their provisions regarding liability, remedies, and waiver do not apply to the automatic debits.

Next, defendants argue that plaintiff has not adequately pleaded "consumer-oriented" conduct within the meaning of Section 349, because "[p]rivate contract disputes unique to the parties are not within the ambit of the statute."  Defs.' Mem. in Supp. 28 (citing *Oswego Laborers' Loc. 214 Pension Fund*, 85 N.Y.2d at 25).  But plaintiff does not premise its claim under Section 349 on a "[p]rivate contract dispute[] unique to the parties."  *Ibid*.  Instead, as explained above, plaintiff had pleaded that FCSB "has a practice" of terminating consumers' automatic-payment agreements to manufacture defaults.  *Id*. ¶¶ 290-91.  Consistent with the New York Court of Appeals' recognition that a Section-349 claim may be premised on "standard" services that a bank provides to consumers, which potentially affect not only an individual plaintiff but also "similarly situated consumers," *Oswego Laborers' Loc. 214 Pension Fund*, 85 N.Y.2d at 26-27, plaintiff's allegations about defendants' automatic-payment practices are sufficient.

In disputing the sufficiency of plaintiff's consumer-oriented conduct allegations, defendants also take issue with the veracity of plaintiff's account, contending that the automatic-payment agreement FCSB offered to 21st Street is not actually available to other consumers.  *See* Defs.' Reply 12-14 (Dkt. #32).  However, since a court must accept the allegations contained in

20

the complaint as true on a motion to dismiss, this argument makes no headway. *Hamilton*, 3 F.4th at 90-91.

Finally, defendants err in contending that a Section-349 claim must be dismissed as duplicative when a plaintiff also brings a breach-of-contract claim. *See* Defs.' Mem. in Supp. 29; Defs.' Reply 14. Defendants rest their argument on *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635 (S.D.N.Y. 2020), but they misread *Perks* and the case it relies upon. In both cases, the Section-349 claim failed because the plaintiff had not alleged that the defendants went beyond simply breaching a contract, to committing a "practice that was misleading in a material respect." *Perks*, 444 F. Supp. 3d at 642; *Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 575 (E.D.N.Y. 2015) (dismissing Section-349 claim when it was "essentially that the [d]efendant failed to satisfy its contractual duties, not that it concealed or misrepresented any contractual terms"). Accordingly, when considering whether to dismiss a Section-349 claim as duplicative of a parallel breach-of-contract claim, a court inquires whether "the act or practice" giving rise to the Section 349-claim is "'misleading in a material respect separate and apart' from the allegations of breach of contract." *Ji Dong Cheng v. HSBC Bank USA, N.A.*, 511 F. Supp. 3d 248, 255 (E.D.N.Y. 2021) (quoting *Perks*, 444 F. Supp. 3d at 642) (declining to dismiss Section-349 claim as duplicative); *see Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 125 (2d Cir. 2017) (a plaintiff need not allege Section-349 damages independent of contract damages).

Here, the complaint successfully alleges that FCSB engaged in a "practice . . . 'misleading in a material respect separate and apart' from the allegations of breach of contract." *Ji Dong Cheng*, 511 F. Supp. 3d at 255 (quoting *Perks*, 444 F. Supp. 3d at 642). Specifically, FCSB solicited 21st Street's participation in an automatic debit arrangement, Compl. ¶ 104, and then continued to debit the account without requiring reauthorization for nearly eight years, *id*. ¶¶ 105,

230. This "practice" "lulled" 21st Street into inaction, permitting FCSB to make 21st Street miss monthly payments. *Harte*, 2014 WL 4677120, at *17 (finding Section-349 claim plausible where defendant's statements led plaintiff to neglect pursuit of loss mitigation strategies, resulting in assessment of late fees and foreclosure on mortgage (citing *Pandit,* 2012 WL 4174888, at *6)); *Rosendale v. Mr. Cooper Grp. Inc.*, No. 19-CV-9263 (NSR), 2021 WL 4066821, at *19 (S.D.N.Y. Sept. 7, 2021); *M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 571 (E.D.N.Y. 2010).  Since 21st Street pleads that FCSB engaged in deceptive conduct, *Perks* is inapposite.

Accordingly, defendants' motion to dismiss the Section-349 claim is granted as to the loan statements and denied as to the termination of the automatic-debit agreement.  *See Rosendale*, N2021 WL 4066821, at *20 (granting in part and denying in part Section-349 claim).

## III.  21st Street Has Not Adequately Pleaded a Violation of the Implied Covenant of Good Faith and Fair Dealing

21st Street's claim that FCSB breached the implied covenant of good faith and fair dealing is dismissed.  While 21st Street's briefing seeks to shift the focus, the claim regarding this covenant that 21st Street sets forth in its complaint is simply that FCSB breached the covenant by failing to give notice that "non-monetary defaults had occurred and that the loans were accruing default interest that either FCSB or its successors or assigns could charge."  Compl. ¶ 308; *see id*. ¶¶ 305-13.

That allegation fails to state a claim.  The implied covenant of good faith and fair dealing may give rise to a notice requirement.  *See*, *e.g.*, *Components Direct, Inc. v. Eur. Am. Bank & Tr. Co*., 175 A.D.2d 227, 229 (N.Y. App. Div. 1991) (citing UCC 2-309, Comment 8).  But this covenant operates only "effectuate the intentions of the parties, or to protect their reasonable expectations."  *Gaia House Mezz LLC v. State St. Bank & Tr. Co*., 720 F.3d 84, 93 (2d Cir. 2013) (quotations omitted).  Therefore, it "cannot be used . . . to imply an obligation inconsistent with

other terms of a contractual relationship." *Ibid.* (citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995)).  Here, 21st Street's mortgage and note expressly define when FCSB was required to give notice, including with respect to defaults.  *See* page 13-15, *supra*.  Since the mortgage addresses when notice is due, and the parties "neglected to specifically include" a requirement that FCSB provide 21st Street with notice whenever an event of default occurred, the Court may not imply one here. *Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (N.Y. 2004) (quotations omitted).

In opposing the motion to dismiss, 21st Street seeks to shift the substance of its claim regarding good faith and fair dealing.  Pivoting from its allegations regarding failure to give notice of defaults, *see* Compl. ¶¶ 305-13, 21st Street suggests that FCSB administered 21st Street's loan in bad faith, and sought to undermine the loan contract itself, by cancelling the automatic-payment agreement to create a default, *see* Pl.'s Mem. in Opp. 14-17.  This theory is simply not part of the good-faith-and-fair-dealing claim presented in the complaint.  Accordingly, the Court does not address it.

## IV.    The Complaint Does Not State a Claim for Negligent Misrepresentation[4]

21st Street similarly fails in its negligent-misrepresentation claim against FCSB and Mr. Stevens for not informing 21st Street of its defaults.  Compl. ¶¶ 330-34.  To state a claim for negligent misrepresentation in New York, a plaintiff must "demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect or withheld; and (3) reasonable reliance on

---

[4] Labeled a claim for "Negligent/Fraudulent Misrepresentation," the fourth cause of action appears to raise a negligent misrepresentation claim and the Court construes it as such, as do the parties. Compl. ¶¶ 315, 330 (alleging, *inter alia*, the existence of a "special relationship"); Pl.'s Mem. in Opp'n 1 (discussing "negligent misrepresentation"); Defs.' Mem. in Opp'n 24-28 (same).  Even so, if these allegations were recast as a second fraud claim, *see Eternity Glob. Master Fund Ltd.*, 375 F.3d at 186, it would fail for the same reasons as the first fraud claim: 21st Street has not established a duty to disclose, and the terms of the mortgage preclude reasonable reliance on omissions concerning defaults.  *See* pages 6-15, *supra*.

the information or omission." *High Tides, LLC v. DeMichele*, 88 A.D.3d 954, 959 (N.Y. App. Div. 2011) (quoting *Mandarin Trading Ltd.*, 16 N.Y.3d at 180) (brackets omitted).   Plaintiff's negligent-misrepresentation claim falls short on two independent grounds.

First, 21st Street does not adequately allege "a special or privity-like relationship" requiring defendants to disclose omitted information. *Ibid*.   To determine whether such a relationship exists, courts consider "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (N.Y. 1996).   Courts distinguish between "an arms-length commercial transaction," which, "without more, does not give rise to a special duty to speak with care," *Phoenix Cos., Inc. v. Concentrix Ins. Admin. Sols. Corp.*, No. 20-CV-1738 (KPF), 2021 WL 3604663, at *12 (S.D.N.Y. Aug. 12, 2021) (quotations omitted) (collecting cases), and the provision of professional services, which do give rise to a special duty, by virtue of the professional's "training and expertise," *Kimmell*, 89 N.Y.2d at 263 (citing lawyers, engineers, and accountants).   Even absent a professional certification, a duty may still exist if a defendant holds himself out as possessing special knowledge and induces the plaintiff to rely on that knowledge, *id.* at 264-65, or if a fiduciary relationship exists, *Aetna Cas. & Sur. Co.*, 404 F.3d at 584.   This determination is made "on a case-by-case basis."   *Murphy v. Kuhn*, 90 N.Y.2d 266, 272 (N.Y. 1997).   When a complaint fails to allege the existence of a special relationship, dismissal is appropriate.   *Phoenix Cos., Inc.*, 2021 WL 3604663, at *13 (collecting cases).

Applying these principles, 21st Street has not sufficiently alleged the existence of a special relationship.   It does not, for example, allege that defendants offered professional services akin to those of a lawyer or an engineer.   *Kimmell*, 89 N.Y.2d at 263.   Rather, 21st Street rests its claim

on the fact that defendants were willing to do business with 21st Street, Compl. ¶ 326, and that the parties engaged in "very personal," and "casual" contacts, communicating by email or phone frequently, *id*. ¶ 327.   These allegations are insufficient. "[E]ven if there is a long-standing relationship between the customer and a particular bank employee or if the parties are familiar or friendly," "an arm's length borrower-lender relationship . . . does not support a cause of action for negligent misrepresentation." *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 578 (N.Y. 2011) (citations and quotations omitted); *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (finding allegations that lender "claimed special expertise in bridge loans to forestall foreclosures" not enough to establish special relationship).

21st Street is a sophisticated commercial entity that entered into a negotiated contractual relationship for a mortgage.  While its relationship with FCSB and Mr. Stevens may have been "long-standing" and "familiar [and] friendly," *Greenberg, Trager & Herbst, LLP*, 17 N.Y.3d at 578, this sort of relationship does not bear the hallmarks necessary to establish the special relationship required for a negligent-misrepresentation claim.  And even if they had held themselves out as possessing "special expertise" concerning mortgages, such representations would be insufficient to transform the "borrower-lender relationship" into a special relationship capable of sustaining a negligent-misrepresentation claim.  *Crawford*, 758 F.3d at 490 (quotations omitted).  For these reasons, 21st Street's negligent-misrepresentation claim cannot succeed.

Moreover, even if 21st Street had alleged the existence of a special relationship, the complaint still lacks sufficient allegations of reasonable reliance.  As with fraud claims, courts "consider the entire context of the transaction, including . . . the sophistication of the parties, and the content of any agreements between them" to determine whether reliance was reasonable. *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 355 (S.D.N.Y.

25

2017) (quoting *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003)).  The mortgage and the note expressly identify the notice to which 21st Street was entitled.  *See* pages 14-15, *supra*.  And as a sophisticated commercial actor, 21st Street had the opportunity to "insert[] appropriate language in the agreement for [its] protection."  *Id*. at 356 (quoting *Emergent Capital Inv. Mgmt., LLC*, 343 F.3d at 195).  Since it did not, 21st Street can "be said to have willingly assumed the business risk" from lack of notice regarding the relevant defaults, *ibid*. (quoting *Emergent Cap. Inv. Mgmt., LLC*, 343 F.3d at 195), and it "cannot establish reasonable reliance on that" omission, *ibid*. (quotations omitted).

Accordingly, 21st Street's negligent-misrepresentation claim against FCSB is also dismissed.  And as with the fraud claim, 21st Street's failure to state a claim against FCSB or to allege any conduct by Mr. Stevens taken outside his capacity as FCSB's agent requires the dismissal of the claim against Mr. Stevens as well.  *See* page 15, *supra*.

## V.   The Breach-of-Contract Claim Is Dismissed

Finally, defendants' motion to dismiss is granted as to the breach-of-contract claim.  This claim rests on the allegation that FCSB "breached its promise . . . to automatically transfer funds from the [m]erchant [a]ccount to the operating account, resulting in an insufficient balance . . . to satisfy the mortgage payment[s]."  *Id*. ¶ 340; *see id*. ¶¶ 336-50.

21st Street may not recover for any termination of automatic transfers between the merchant account and operations account because these accounts belonged to 21 Group, not 21st Street.  21 Group Transfer Request; 21 Group Transfer Notation; *see AECOM*, 19 F.4th at 107 (a court may take judicial notice of the "contract[s] . . . containing obligations upon which the plaintiff's complaint stands or falls").  Even when a contract "may benefit a third-party end user, that does not itself establish enforcement rights in that third party."  *Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 711 (N.Y. 2018) (finding no third-party enforcement right even where

26

"the parties were aware" that a contracted-for building was being built "for [the third party's] use").

In New York, a third party may sue to enforce a contract "when the third party is the only one who could recover for the breach of contract[,] or when it is otherwise clear from the language of the contract that there was an intent to permit enforcement by the third party." *Id*. at 710; *see Fourth Ocean Putnam Corp. v. Interstate Wrecking Co*., 66 N.Y.2d 38, 45 (N.Y. 1985). Neither condition is present here. 21st Street does not allege or argue that it is the only party who may recover for the breach of this agreement. *See* Compl.; Pl.'s Mem. in Opp. Nor does the contract's "language . . . '*clearly* evidence[] an intent to permit enforcement'" by 21st Street. *Consol. Edison, Inc. v. Ne. Utilities*, 426 F.3d 524, 528 (2d Cir. 2005) (emphasis in original; brackets omitted) (quoting *Fourth Ocean Putnam Corp.*, 66 N.Y.2d at 45). The transfer agreement contains no reference to 21st Street at all. 21 Group Transfer Request; 21 Group Transfer Notation. This omission precludes 21st Street from bringing a third-party claim. *Consol. Edison, Inc.*, 426 F.3d at 528.

To dodge this rule, 21st Street urges the Court to treat 21st Street and 21 Group as a single entity. *See* Pl.'s Mem. in Opp. 13. This argument does not persuade. "It is black-letter law that one corporation cannot assert an affiliate's legal rights." *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12-CV-722 (PAE), 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012); *Alexander & Alexander of N.Y. Inc. v. Fritzen*, 114 A.D.2d 814, 815 (N.Y. App. Div. 1986) (if two affiliates "are separate and distinct entities, with neither exercising complete dominion and control over the other, there is no basis" for permitting one to assert the other's claim), *aff'd*, 68 N.Y.2d 968 (N.Y. 1986). When a corporation "desires the legal benefits to be derived from organization of a[n] [affiliate] that will function separately and autonomously in the conduct of its own distinct business, the

[corporation] must accept the legal consequences, including its inability later to treat the [affiliate] as its alter ego because of certain advantages that might thereby be gained." *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 980 F. Supp. 2d 400, 409 (E.D.N.Y. 2013) (quoting *In re Beck Indus., Inc.*, 479 F.2d 410, 418 (2d Cir.1973)). In other words, a corporation cannot "have it both ways." *Ibid.* (quoting *In re Beck Indus., Inc.*, 479 F.2d at 418).

21st Street appeals to a narrow exception to this general rule. *See* Pl.'s Mem. in Opp. 13. Under this exception, the sole owner and president of a corporation may sue on that corporation's behalf when the defendant perpetrated fraud on the owner prior to the corporation's formation, *Walcutt v. Clevite Corp.*, 13 N.Y.2d 48, 56 (N.Y. 1963), or when the corporate veil has already been pierced, *Sterling Nat'l Bank v. Goldberg*, 277 A.D.2d 45, 47 (N.Y. App. Div. 2000). None of these conditions are satisfied. 21st Street is not alleged to be 21 Group's sole owner and president, the corporate veil has not already been pierced, and this claim does not involve allegations of fraud perpetrated prior to 21 Group's formation. *See* Compl.

Since 21 Group's "separate nature cannot simply be ignored when inconvenient," *Clarex Ltd.*, 2012 WL 4849146, at *6, and 21st Street does not "have standing to assert claims belonging to [21 Group], simply because their business is intertwined," *EVIP Can., Inc. v. Schnader Harrison Segal & Lewis LLP*, No. 18-CV-11456 (LJL), 2021 WL 964943, at *19 (S.D.N.Y. Mar. 15, 2021) (quoting *Hudson Optical Corp. v. Cabot Safety Corp.*, 162 F.3d 1148 (2d Cir. 1998) (summary order)), the breach-of-contract-claim is dismissed.

## CONCLUSION

The motion to dismiss is granted in part and denied in part. The fraud, negligent-misrepresentation, breach-of-the-covenant-of-good-faith-and-fair-dealing, and breach-of-contract

claims are dismissed in full, and the Section-349 claim is dismissed in part.  The motion to strike is terminated as moot.

Since all of the claims against Mr. Stevens have been dismissed, he is dismissed from the case, and the Clerk of Court is directed to update the caption accordingly.

If 21st Street wishes to amend its pleadings, it shall file a motion seeking leave to amend with the proposed Amended Complaint attached as an exhibit.  The motion should explain how the Amended Complaint addresses the pleading defects identified in this opinion.

SO ORDERED.

> /s/  Rachel Kovner
> RACHEL P. KOVNER
> United States District Judge

Dated:          April 4, 2022
                Brooklyn, New York

29