UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
42-50 21ST STREET REALTY LLC,

                                          Plaintiff,                    MEMORANDUM
                                                                    AND ORDER

    -against-

                                                                       20-CV-5370 (RPK)

FIRST CENTRAL SAVINGS BANK,

                                          Defendant.
------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       Currently pending before this Court is a motion filed by plaintiff 45-50 21st Street Realty LLC ("plaintiff") to file an Amended Complaint to add certain claims that were previously dismissed by the District Court, and to add factual allegations to the one existing claim. See Motion to Amend/Memorandum of Law (Sept. 14, 2022) ("Pl. Mem."), Electronic Case Filing Docket Entry ("DE") #60. Defendant First Central Savings Bank ("FCSB") opposes the request on the ground that the proposed amendments are futile. See Memorandum in Opposition (Sept. 14, 2022) ("Def. Opp."), DE #62. For the following reasons, the Court grants in part and denies in part plaintiff's motion.[1]

## FACTUAL BACKGROUND

       By Memorandum and Order dated April 4, 2022, the Honorable Rachel P. Kovner, the District Judge assigned to the case, granted in substantial part the motion of defendants FCSB

---

[1] In accordance with dictum in Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) (indicating that a motion to amend a complaint is "nondispositive" and governed by Rule 72(a) of the Federal Rules of Civil Procedure (the "FRCP")), lower courts in this Circuit increasingly treat motions to amend as nondispositive pretrial motions. See, e.g., Owens v. Centene Corp., 20-CV-118 (EK), 2021 WL 878773, at *1 n.1 (E.D.N.Y. Mar. 9, 2021) (collecting cases and denying motion to amend on several grounds, including futility). To the extent that aspects of this Court's decision are deemed "dispositive" for purposes of Rule 72(b) of the FRCP, it is respectfully recommended that the corresponding portions of plaintiff's motion to amend be denied.

and its former vice president, Thomas Stevens, to dismiss plaintiff's original pleading, including all of the claims against Mr. Stevens. See Memorandum & Order (Apr. 4, 2022) ("M&O"), DE #43. Judge Kovner invited plaintiff to seek leave to amend in the event it wished to remedy the pleading defects identified by the Court. See id. at 29.

The factual allegations detailed at length in plaintiff's original and proposed new pleading may be summarized as follows:

In 2009, FCSB extended plaintiff a mortgage loan to purchase a vacant building in Long Island City, to be transformed by plaintiff into an "all nude adult nightclub." Complaint (Nov. 5, 2020) ("Compl.") ¶¶ 29-38, DE #1; Proposed Amended Complaint (Sept. 14, 2022) ("PAC") ¶¶ 26-35, DE #61-2. Plaintiff thereafter leased the premises to an entity that in turn assigned the lease to 21 Group, Inc. ("21 Group"), which was owned and operated by plaintiff's principals, who ran the nightclub. Compl. ¶¶ 39-40; PAC ¶¶ 36-37. At FCSB's behest, those two entities (and another business controlled by the same principals) shifted their business accounts to FCSB, Compl. ¶ 37; PAC ¶ 34, and entered into written agreements with FCSB to provide for automatic transfers of funds between their accounts, so as to ensure plaintiff's timely payment of its monthly mortgage obligation to FCSB. Compl. ¶¶ 99-104; PAC ¶¶ 98-106. According to the Proposed Amended Complaint, which expands upon the automatic transfer agreements referenced in the original pleading, several auto-pay agreements were reached on February 18, 2015: First, FCSB agreed that every Tuesday, the balance of 21 Group's merchant account (which received payments from credit card transactions) would be transferred (or "swept") to 21 Group's operating account, PAC ¶ 99. In addition, FCSB and plaintiff entered into written auto-pay agreements whereby FCSB would transfer the

2

monthly loan payment for the mortgage loan from 21 Group's operating account to plaintiff's operating account, which would then be automatically debited the amount of the monthly loan payment. Id. ¶ 100; see id. ¶¶ 102, 104-106.

This arrangement continued without incident until December 2017, when the police briefly shut down the nightclub on prostitution charges, and FCSB, concerned about its reputational risk, began looking for ways to sell the mortgage on the secondary market. Compl. ¶¶ 7, 124-134, 167; PAC ¶¶ 7, 128-138, 170. According to plaintiff, FCSB, knowing that the loan was current, decided to fabricate an event of default and to market the loan at par as "non-performing" (such that a buyer could immediately declare a default and charge plaintiff the default interest rate of 24 percent per annum). Compl. ¶¶ 6-8, 156; PAC ¶¶ 6-8, 158. Without informing plaintiff, FCSB terminated the auto-payments and transfers, causing plaintiff to miss a mortgage loan payment that was due on February 1, 2018. Compl. ¶¶ 147-152; PAC ¶¶ 148-154. By the time plaintiff discovered the missed payment and instructed FCSB, on or about March 2, 2018, to transfer funds "to satisfy the past due amount," Compl. ¶¶ 164-165, 169; PAC ¶¶ 167-168, 174-175, FCSB had already contacted a buyer for the note, Watermarq Capital Partners ("Watermarq"), and, having represented the loan as "non-performing," had obtained from Watermarq a Letter of Intent. Compl. ¶¶ 159-161, 166; PAC ¶¶ 163-165, 169. Meanwhile, in response to plaintiff's direction on or about March 2, 2018, FCSB transferred funds to satisfy plaintiff's February 1st payment obligation, but not the payment that was due on March 1, 2018. PAC ¶ 176. In addition, FCSB drafted backdated letters requesting that plaintiff and its guarantors provide financial information claimed to be missing from FCSB's files; however, those letters were not sent to the purported recipients

3

(who would have promptly supplied the requested information), but instead were created in order to stage another event of default. Compl. ¶¶ 174-184; PAC ¶¶ 182-192.

On March 30, 2018, FCSB assigned the mortgage and note to Watermarq, which, citing plaintiff's missed payments and failure to provide financial information for years 2015 and 2016, immediately accelerated the mortgage and demanded repayment of the principal, along with unpaid interest and penalties and fees totaling in excess of $470,000. Compl. ¶¶ 185, 188, 191, 197-198; PAC ¶¶ 193, 196, 199, 204-205. Plaintiff subsequently settled an action commenced by Watermarq to foreclose on the mortgage. Compl. ¶ 240; PAC ¶ 255.

On November 5, 2020, plaintiff filed the instant action against FCSB and its former vice president, asserting claims against both for fraud and negligent misrepresentation, as well as claims against FCSB alone for breach of contract, breach of the implied covenant of good fath and fair dealing, and violation of section 349 of New York's General Business Law. In response to the defense motion to dismiss the Complaint in its entirety, Judge Kovner dismissed in full all of plaintiff's claims other than the section 349 claim, which she dismissed in part only. See generally M&O. Plaintiff's Proposed Amended Complaint does not replead the fraud or negligent misrepresentation claims, nor does it assert any claim against the individual defendant. Rather, plaintiff proffers additional factual allegations and theories to support its revised claims for breach of contract, breach of the implied covenant, and violation of section 349.

For the reasons that follow, plaintiff's motion to amend is granted, except as to the

4

implied-covenant claim.[2]

## DISCUSSION

I. **Plaintiff's Motion to Amend**

 A. **General Legal Principles**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, courts ordinarily should grant leave to amend in the absence of bad faith by the moving party, undue prejudice or futility. See, e.g., Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000). As a general matter, on a motion to amend, the court accepts as true the factual allegations in the proposed amended complaint, but disregards any evidence except that which is included in or incorporated by reference in the proposed pleading. See Nettis v. Levitt, 241 F.3d 186, 194 n.4 (2d Cir. 2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss."), overruled on other grounds by Slayton v. Am. Express Co., 460 F.3d 215 (2d Cir. 2006); Seemann v. Coastal Envtl. Grp., Inc., 219 F.Supp.3d 362, 367 (E.D.N.Y. 2016); Cano v. DPNY, Inc., 287 F.R.D. 251, 257 (S.D.N.Y. 2012). "A court may deny a motion to amend as futile only where no colorable grounds exist to support the proposed claim; if it sets forth facts and circumstances which may entitle the plaintiff to relief, then futility is not a proper basis on which to deny the

---

[2] In a letter-motion filed on September 15, 2022, FCSB requested oral argument in connection with plaintiff's motion to amend. See Letter Motion for Hearing (Sept. 15, 2022) at 1, DE #67. This Court already heard extensive oral argument at a premotion conference concerning the Proposed Amended Complaint. See Minute Entry for Initial Conference Hearing/Pre Motion Conference (May 3, 2022), DE #48. Moreover, FCSB thereafter filed 29 pages of detailed argument opposing plaintiff's motion to amend. See generally Def. Opp. Under the circumstances, the Court concludes that further oral argument is not warranted.

amendment." Allison v. Clos-ette Too, L.L.C., No. 14 Civ. 1618(LAK)(JCF), 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015) (internal quotation marks and citation omitted).

### B. Breach of Contract

The District Court dismissed plaintiff's breach of contract claim on the ground that "[plaintiff] may not recover for any termination of automatic transfers between the merchant account and operations account because these accounts belonged to 21 Group, not [plaintiff]." M&O at 26. The Court further held that the absence of any reference to plaintiff in the transfer agreement "precludes [plaintiff] from bringing a third-party claim." Id. at 27.

Plaintiff contends that its amended breach of contract claim cures the deficiencies in its original pleading. The new contract claim alleges that "on or about February 18, 2015, FCSB and Plaintiff entered into written auto pay agreements whereby FCSB was authorized to transfer the monthly loan payment for the mortgage loan from 21 Group's operating account to Plaintiff's operating account and then automatically debit the monthly loan payment for the mortgage loan (the 'Auto Pay Agreement')." PAC ¶ 100. According to plaintiff, the aforesaid agreement—which, absent "15 days written notice" of termination by FCSB, continued until March 1, 2030, id. ¶ 105—references plaintiff as a party and lists the accounts belonging to plaintiff, see id. ¶¶ 100-104, 309, 311-312. The Proposed Amended Complaint further alleges that "[t]he Auto Pay Agreement was established for payment of Plaintiff's mortgage loan . . . and Plaintiff is the only party that could recover for breach of the Auto Pay Agreement against Defendant." Id. ¶ 318. In other words, the sole purpose of the Auto Pay Agreement was to transfer funds from 21 Group's operating account to plaintiff's operating account (from which the mortgage payment was to be automatically debited) and thus

6

"was intended to benefit the Plaintiff exclusively." See id. ¶¶ 100, 309, 311-312, 320-321. The revised claim avers that FCSB breached that agreement in or about February and March 2018, by failing to transfer funds from plaintiff's operating account and to process the automatic payment for the mortgage loan. See id. ¶ 313.

FCSB counters that plaintiff's allegations are "belied by the written Transfer Authorization[,] . . . authorizing the transfer of $20,000 from 21 Group's Merchant Account to 21 Group's operating account[.]" Def. Opp. at 25. FCSB does not explain, however, how the written transfer authorization to which it refers—and which pertains to a one-time transfer—renders implausible plaintiff's allegation that FCSB failed to process the automatic transfers and payments required by a different document, the Auto Pay Agreement. Nor does FCSB claim that the written transfer authorization somehow terminated the Auto Pay Agreement. The existence of a written transfer authorization is not inconsistent with plaintiff's allegations that plaintiff and FCSB entered into a written auto pay agreement, whereby, on a monthly basis, FCSB was obligated to transfer the monthly loan payment for the mortgage loan from 21 Group's operating account to plaintiff's operating account and then to automatically debit the monthly loan payment for the mortgage loan. See PAC ¶ 100.

FCSB further argues that plaintiff's claim is contradicted by bank statements produced in a state court foreclosure action, which demonstrate that there were insufficient funds in 21 Group's operating account to transfer the amounts due for the February and March 2018 mortgage loan payments. See Def. Opp. at 26; Supplemental Declaration of Michael Serao (Sept. 14, 2022) ¶¶ 3-8, DE #65. But as the District Court held in evaluating defendants' motion to dismiss, extrinsic materials, such as the "[b]ank statements attached by defendants[,]

7

. . . must [be] disregard[ed,]" with plaintiff's allegations accepted as true. M&O at 3 n.2.[3] Moreover, plaintiff disputes the facts relied on by FCSB. See Reply in Support (Sept. 14, 2022) at 8, DE #66 (referencing "records showing 21 Group had over $130,000 in cash in its account at the time"). FCSB's merits-based arguments predicated on disputed facts are unavailing on a motion to amend. See Alaska Elec. Pension Fund v. Bank of Am. Corp., 14-CV-7126 (JMF), 2017 WL 466468, at *1 (S.D.N.Y. Feb. 1, 2017); DeWan v. Seideman, 17 Civ. 1315 (ER), 2017 WL 6048816, at *4 n.5 (S.D.N.Y. Dec. 5, 2017); Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist., No. 6:07–CV–235 (DNH/GJD), 2008 WL 111174, at *1 (N.D.N.Y. Jan. 7, 2008) ("When amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions . . . .").

FCSB also argues that plaintiff fails to demonstrate that its purported breach of the Auto Pay Agreement caused plaintiff any damages. See Def. Opp. at 26-27. In connection with a breach of contract claim, "[r]ecovery is not allowed if the claimed losses are 'the result of other intervening causes.'" Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 53 (2d Cir. 2011) (quoting Wakeman v. Wheeler & Wilson Mfg. Co., 101 N.Y. 205, 209 (1886)). That said, "[t]o break the legal chain, the intervening act must have been 'of such an extraordinary nature or so attenuated from the defendants' conduct that responsibility for the

---

[3] While complaining that the PAC adds or recasts allegations that the District Court "already considered and rejected[,]" Def. Opp. at 8, FCSB's memorandum opposing plaintiff's motion to amend repeatedly relies on monthly bank statements from "the *Queens* Action," see id. at 14 & n.2, 15-17, 25-26, which Judge Kovner expressly held constituted "extrinsic materials" that the Court was required to disregard, see M&O at 3 n.2. This Court likewise declines to consider those extrinsic materials and rejects FCSB's conclusory argument that "plaintiff relied on [these documents] in drafting the PAC" and that they therefore are "integral to the complaint[.]" Def. Opp. at 26.

injury should not reasonably be attributed to them." Johnson v. Bryco Arms, 304 F.Supp.2d 383, 395 (E.D.N.Y. 2004) (Weinstein, J.) (quoting Gordon v. Eastern Ry. Supply, Inc., 82 N.Y.2d 555, 562 (1993)). Hence, "[a]n act is not an intervening cause if it is a natural and foreseeable consequence of a circumstance created by defendant." Optima Media Grp. Ltd. v. Bloomberg L.P., 17-cv-01898 (AJN), 2021 WL 1941878, at *21 (S.D.N.Y. May 14, 2021) (Nathan, J.) (internal quotation marks and citation omitted).

      Here, the fact that the default was declared by Watermarq, the entity that had purchased plaintiff's loan from FCSB, does not necessarily constitute an intervening cause that would absolve FCSB of liability. Plaintiff alleges that FCSB's intentional failure to process the automatic transfers directly caused the event of default, and that FCSB created the default for the purpose of marketing plaintiff's purportedly non-performing loan, at par value, to the secondary market, where a buyer would declare the default. Watermarq relied on plaintiff's failure to make timely payments in February and March 2018 as grounds for then declaring the default. See PAC ¶¶ 196, 199. According to plaintiff's allegations, Watermarq's action in declaring plaintiff's default would not have occurred but for FCBS's creation of the event of default, and the resulting injury to plaintiff was a foreseeable consequence of FCSB's conduct. In any event, questions of causation in a breach of contract claim "should generally be resolved by the factfinder." NAF Holdings, LLC v. Li & Fung (Trading) Ltd., 10 Civ. 5762 (PAE), 2016 WL 3098842, at *6 (S.D.N.Y. June 1, 2016) (quoting Voss v. Netherlands Ins. Co., 22 N.Y.3d 728, 737 (2014)).

      Simply put, accepting the amended pleading's allegations as true, FCSB has failed to establish as a matter of law that plaintiff's proposed breach of contract claim would not survive

9

a motion to dismiss. Plaintiff may therefore interpose the proposed claim.

### C. Breach of Implied Covenant

The District Court dismissed plaintiff's original claim for breach of the implied covenant of good faith and fair dealing. In the original Complaint, plaintiff had alleged "that FCSB breached the covenant by failing to give notice that 'non-monetary defaults had occurred and that the loans were accruing default interest[.]'" M&O at 22. Judge Kovner found that the loan agreements contained express provisions as to when FCSB was required to give notice of default, and held that the implied covenant could not be used to create additional contract terms. See id. at 22-23. Now, however, in its amended claim, plaintiff alleges that FCSB's conduct in violation of the implied covenant consisted of the following: (1) failing to prepare a loan account review in December 2017, and (2) intentionally failing to process the automatic transfers to pay the mortgage loan. See Pl. Mem. at 10; PAC ¶¶ 128-192, 295-301.

First, regarding FCSB's failure to conduct a loan account review in December 2017, FCSB correctly argues that the loan documents referenced in the pleading impose upon plaintiff, *not FCSB*, the obligation to provide financial documents to FSCB. See Mortgage (Sept. 14, 2022) ¶ 34, DE #64-2. There is no requirement that FCSB provide notice to plaintiff if plaintiff failed to timely provide the required financial documents. See id. As Judge Kovner held in dismissing plaintiff's original implied-covenant claim: "[Plaintiff's] mortgage and note expressly define when FCSB was required to give notice, including with respect to defaults. Since the mortgage addresses when notice is due, and the parties 'neglected to specifically include' a requirement that FCSB provide [plaintiff] with notice whenever an event of default occurred, the Court may not imply one here." M&O at 23


(citations omitted). The same logic applies to this new aspect of plaintiff's proposed implied-covenant claim. The District Court's previous opinion bars plaintiff's proposed claim that FCSB is liable for failing to request that plaintiff provide financial documents and information, inasmuch as the mortgage documents could have, but did not, include such a requirement. See id.

As for the second aspect of plaintiff's proposed claim for breach of the implied covenant, plaintiff's new theory is based on FCSB's intentional failure to process the automatic transfers, and thus relies on the same facts as plaintiff's amended breach of contract claim. "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). Accordingly, where "a plaintiff claims a breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim, the claim for the breach of the implied covenant must be dismissed as duplicative of the breach of contract claim." Hadami, S.A. v. Xerox Corp., 272 F.Supp.3d 587, 598 (S.D.N.Y. 2017); accord Sobel v. Major Energy Servs., LLC, 19 Civ. 8290 (PGG) (DCF), 2020 WL 5362357, at *8 (S.D.N.Y. Sept. 8, 2020).

Here, both claims allege that FCSB terminated the automatic transfer of funds from 21 Group's accounts to plaintiff's operating account and then to plaintiff's loan account to make payments on plaintiff's mortgage loan. Compare PAC ¶¶ 295-296 with id. ¶¶ 313, 315. Both claims allege that FCSB stopped the fund transfers in order to create an event of default so that FCSB could market plaintiff's mortgage loan as "past due" and "non-performing." Compare

id. ¶ 296 with id. ¶ 314. Therefore, this aspect of plaintiff's implied-covenant claim cannot be maintained because it is duplicative of the breach of contract claim. See Bakal v. U.S. Bank Nat'l Ass'n, 747 F.App'x 32, 37 (2d Cir. 2019) (affirming dismissal of implied-covenant claim that also "provides the basis for the [plaintiffs'] breach of contract claim"); Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 203-04 (2d Cir. 2013) (affirming dismissal of claim for breach of an implied covenant of good faith and fair dealing as duplicative of breach of contract claims).

### D. Deceptive Practices Act Claim Under GBL § 349

The District Court dismissed in part plaintiff's deceptive-practices claim, while sustaining that portion of the claim that alleges that FCSB has a practice of terminating authorized automatic payments in order to manufacture events of default. See M&O at 17. Plaintiff now seeks to add new factual allegations to its existing section 349 claim and thus to expand the scheme complained of: i.e., the PAC alleges that FCSB has a practice of requesting financial information from its borrowers, and updates to that financial information, but then intentionally terminates those requests so that a borrower's failure to submit financials can later be cited as an event of default. See PAC ¶¶ 270-273.

In opposing this amendment, FCSB argues that the District Court has already rejected as not actionable plaintiff's allegations that FCSB failed to provide plaintiff notice of "non-monetary defaults." See Def. Opp. at 22 (citing M&O at 22-23). As discussed above, the District Court concluded that the implied covenant of good faith and fair dealing does not require that FCSB give notice of a default, other than as provided by the terms of the mortgage and note. See M&O at 22-23. The District Court declined to imply a contract term that the

12

parties "neglected to specifically include." Id. at 23.

Nevertheless, FCSB mischaracterizes the nature of plaintiff's proposed allegations. Unlike its previously dismissed implied-covenant claim, plaintiff's proposed section 349 claim does not concern FCSB's failure to provide notice; rather, plaintiff alleges that, while administering loans, FCSB has a practice of periodically requesting financial documents from customers, but then, in order to contrive an event of default, it stops making those requests so that the failure to submit financials may be invoked as an event of default. See PAC ¶¶ 270-273. This practice is claimed to have "lulled" plaintiff into believing it was complying with its obligations, while permitting FCSB to characterize the mortgage loan as "non-performing." Id. ¶¶ 273-275. Indeed, Watermarq relied on plaintiff's failure to provide financial information for 2015 and 2016 as a ground for declaring a default and accelerating the amounts due under the loan documents. See id. ¶ 199. Moreover, FCSB's reliance on the reasoning that the District Court applied to the implied-covenant claim is misplaced in the context of a section 349 claim. See, e.g., Ward v. TheLadders.com, Inc., 3 F.Supp.3d 151, 164, 169-70 (S.D.N.Y. 2014) (while holding that "[t]he implied covenant of good faith and fair dealing 'cannot be used to create terms that do not exist in the writing[,]'" court declines to dismiss section 349 claim complaining of similar deceptive practices) (citation omitted). In analogous circumstances, allegations of misleading lending practices have been found sufficient to sustain section 349 claims. See Harte v. Ocwen Fin. Corp., 13-CV-5410 (MKB), 2014 WL 4677120, at *17 (E.D.N.Y. Sept. 19, 2014) (finding plausible section 349 claim against lender that "routinely engages in 'dual tracking,' where it purports to be processing a loan modification but actually intends to move the borrower toward foreclosure"); Pandit v. Saxon Mortg.

13

Servs., Inc., No. 11-CV-3935(JS)(GRB), 2012 WL 4174888, at *6 (E.D.N.Y. Sept. 17, 2012) (denying motion to dismiss section 349 claim that alleged that bank's practice of delaying decision on loan modifications "lulled [borrowers] into not pursuing other options for saving their home"). Therefore, plaintiff's motion to amend its section 349 claim is granted.

## II.    FCSB's Request to Strike Allegations in the Pleadings

In an argument that should have been advanced as a cross-motion, and without citation to any authority, FCSB requests that the Court strike various allegations in the original Complaint and the Proposed Amended Complaint that FCSB claims are "extraneous to" the claims remaining in the case "and/or [are] defamatory." Def. Opp. at 27. In addition to erroneously assuming that the challenged allegations pertain to claims that "are not actionable," see id. at 28, 29, FCSB's motion to strike fails to address the legal standards that govern such applications.

Pursuant to Rule 12(f) of the FRCP, a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." Brady v. Basic Research, L.L.C., 101 F.Supp.3d 217, 225 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). "Motions to strike are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." Id. (internal quotation marks, alteration and citation omitted); accord United States v. Anthem Inc., 20-cv-2593 (ALC), 2022 WL 4815978, at *2 (S.D.N.Y. Sept. 30, 2022). Because courts "should not tamper with the

14

pleadings unless there is a strong reason for so doing[,]" a Rule 12(f) motion to strike matter as impertinent or immaterial "will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976); see Anderson v. Davis Polk & Wardwell LLP, 850 F.Supp.2d 392, 416 (S.D.N.Y. 2012). In that connection, the fact that a complaint may be "overly narrative or contain generalized statements or matters of opinion" does not warrant striking portions of the pleading absent a showing that the allegations "are either irrelevant or unsupported." Lynch v. Southampton Animal Shelter Found. Inc., 278 F.R.D. 55, 65 (E.D.N.Y. 2011) (quoting Kehr v. Yamaha Motor Corp., U.S.A., 596 F.Supp.2d 821, 829 (S.D.N.Y. 2008)).

In short, to prevail on a Rule 12(f) motion to strike, the movant must show that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." Anthem Inc., 2022 WL 4815978, at *2 (internal quotation marks and citation omitted). FCSB has made no such showing in this case. Indeed, FCSB's motion to strike is essentially conditional in nature, in that it requests the striking of the challenged portions of the pleadings "if Plaintiff's motion to amend is denied[.]" Def. Opp. at 29; see id. at 27 ("Should the Court deny Plaintiff's motion to amend the Complaint . . . ."); see also id. at 2. But, for the reasons set forth in the preceding sections of this opinion, the Court is largely granting plaintiff's motion to amend,[4] and, the allegations that FCSB calls "extraneous"

---

[4] Notably, in denying plaintiff's motion to amend the implied-covenant claim, the Court ruled that that portion is duplicative of the proposed breach of contract claim. See *supra* at pp. 11-12.

15

contain "background information[, which] provides context for and is logically connected to both the state of mind and motivation of the parties as well as the nature of their relationship." G.L.M. Sec. & Sound, Inc. v. LoJack Corp., No. 10–CV–4701 (JS)(ARL), 2012 WL 4512499, at *7 (E.D.N.Y. Sept. 28, 2012).

As a fallback position, FCSB asserts, in conclusory fashion, that "should the Court permit amendments to the Complaint, in whole or in part, there are still too many allegations in the pleading that have no place in this case." Def. Opp. at 27. As FCSB fails to identify the "many allegations" to which the aforesaid request pertains, its alternative motion to strike is "much too general" and is therefore denied. Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 579 (2d Cir. 1969); see Anthem Inc., 2022 WL 4815978, at *2; Arias-Zeballos v. Tan, No. 06 CIV. 1268(GEL), 2006 WL 3075528, at *9 (S.D.N.Y. Oct. 26, 2006) (Lynch, J.).

Finally, FCSB complains that plaintiff's "ad hominem and slanderous attacks" against FCSB's then CEO and Chairman of the Board should be stricken. See Def. Opp. at 29.[5] Although FCSB again fails to cite any caselaw or other authority in support of its request, the Court presumes that FCSB is invoking that portion of Rule 12(f) that grants the Court discretion to "strike from a pleading . . . scandalous matter." Fed. R. Civ. P. 12(f). "'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." Anderson, 850 F.Supp.2d at 416 (internal quotation marks and citation

---

[5] Not to be outdone, in its opposition brief, FCSB launches an *ad hominem* attack on plaintiff's principal. See Def. Opp. at 29 n.5.

omitted). Having reviewed the 14 paragraphs cited by FCSB, see Def. Opp. at 29, the Court, exercising its "considerable discretion" under Rule 12(f), see G.L.M. Sec. & Sound, 2012 WL 4512499, at *7, concludes that FCSB is not entitled to the relief requested. Therefore, FCSB's cross-motion to strike is denied in its entirety.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to amend is granted as to its proposed breach of contract and section 349 claims, and denied as to its proposed implied-covenant claim. In addition, FCSB's request to strike allegations from the original and proposed pleadings is denied.

Any objections to this Memorandum and Order must be filed with the Honorable Rachel P. Kovner on or before October 21, 2022. Failure to file objections in a timely manner may waive a right to appeal this order.

**SO ORDERED.**

**Dated:** Brooklyn, New York
October 7, 2022

/s/ *Roanne L. Mann*
ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE